# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

OUTFRONT MEDIA, LLC,

    Plaintiff,

v.

CITY OF TAYLOR,

    Defendant.

Case No.  2:25-cv-10989

Hon.

**COMPLAINT**

# COMPLAINT

Plaintiff Outfront Media, LLC complains against defendant City of Taylor as follows:

## PARTIES

1. Outfront Media, LLC is a Delaware limited liability company with its principal place of business in New York, New York.

2. The City of Taylor is a city chartered under the laws of the State of Michigan and is located in Wayne County.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this action under 28 U.S.C. § 1331 because Outfront asserts claims arising under the United States Constitution and 42 U.S.C. § 1983.

4. The Court has jurisdiction over this action under 28 U.S.C. § 1343(a)(3) and (4) because Outfront seeks to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

5. Venue is proper in the Court under 28 U.S.C. § 1391(b)(1) in this judicial district.

## COMMON ALLEGATIONS

6. Outfront engages in the business of erecting and maintaining outdoor advertising displays, commonly known as billboards, on property it owns or leases

for that purpose. Outfront uses its billboards for the display of noncommercial and truthful commercial messages. Outfront earns income by charging its advertisers for the display of their messages on its billboards.

7. The City regulates billboards and other signs under Appendix A-Article 18 of its code of ordinances ("Ordinance").

8. Section 18.01 states the purpose of the Ordinance as follows:

> The intent of this article is to regulate signs within the City of Taylor. The regulations and standards of this article are intended to be content neutral and are considered the minimum amount necessary to achieve a substantial government interest for public safety, aesthetics, and protection of property values. These objectives are accomplished by establishing the minimum amount of regulations necessary concerning the size, placement, construction, illumination and other aspects of signs in the city so as to:
>
> (a) Protect the public right to receive or convey messages and information protected by the First Amendment of the U.S. Constitution.
>
> (b) Maintain and improve the image of the city by encouraging signs of consistent size which are compatible with and complementary to related buildings and uses, and harmonious with their surroundings.
>
> (c) Recognize that the proliferation of signs is unduly distracting to motorists and nonmotorized travelers, reduces the effectiveness of signs directing and warning the public, causes confusion, reduces desired uniform traffic flow, and creates potential for

3

       accidents.

    (d) Recognize that the principal intent of commercial signs is for identification of an establishment on the premises, and not for advertising off-premises activities.

    (e) Enable the public to locate goods, services and facilities without excessive difficulty and confusion by restricting the number and placement of signs.

    (f) Prevent placement of signs which will conceal or obscure signs of adjacent uses.

    (g) Prevent off-premises signs form conflicting with land uses.

    (h) Prevent signs that are potentially dangerous to the public due to structural deficiencies or disrepair.

    (i) Prohibit most portable commercial signs in recognition of their significant negative impact on traffic safety and aesthetics.

9. Section 18.06 of the Ordinance generally permits billboards in areas zoned as I-1. 1-1 is defined as a light industrial zone. *See* Section 2.01 of Ordinance.

10. Under the Ordinance, billboards must be first permitted by the State before being erected.

11. Billboards are subject to various controls under the Ordinance, including dimensional (*i.e.*, they shall be no larger than 300-square feet per sign face with a maximum of 2 sign faces), height (*i.e.*, they shall be as established for

buildings in the zoning district), and spacing (*i.e.*, a minimum or 1,000 lineal feet along freeways and streets having a right-of-way of 120 feet or more in width). Section 18.06.

12. Section 18.06(b)(2) contains the City's additional requirements regarding the regulation of billboards. Section 18.06(b)(2) states as follows:

> c. Billboards shall be located at least 50 feet from the street right-of-way.
>
> ***
>
> e. The applicant must demonstrate that they have obtained all permits required by the state.
>
> f. Site plan review is required in accordance with article 19, site plan review.
>
> g. There shall be an unobstructed access to a proposed billboard structure, for operation, maintenance, repair, and inspection purposes, which may be provided through an easement. This access shall have a width and location determined by such factors as: the location of adjacent thoroughfares and traffic circulation within the site; and any attendant facilities; the location of buildings and parking facilities; proximity to residential districts and minimizing disturbance to the natural landscape; and the type of equipment which will need to access the site.

13. Section 18.06(b)(2) of the Ordinance states a site plan review is required in accordance with Appendix A- Article 19 of the Ordinance.

14. Section 19.01 states the purpose of the site plan review as follows:

> (a) Site plan review is required to provide the planning

5

commission with the opportunity to review the proposed use of a site in relation to surrounding uses, planned future development, accessibility, pedestrian and vehicular circulation, street traffic, spatial relationships, off-street parking, public utilities, general drainage, environmental characteristics and other site elements which may affect the public health, safety, and general welfare, and its relationship and harmony with city ordinances and plans.

15. Section 19.05 states the standards for site plan approval is:

Based upon the following standards, the planning commission… may deny, **approve, or approve with conditions the site plan**:

(a) Use. The proposed use must be permitted in the zoning district and meet all of the applicable use standards.

(b) Site design characteristics. All elements of the site plan shall be designed to take into account the site's topography; the size and type of lot; the character of adjoining property; the type and size of buildings; and the traffic operations of adjacent streets. The site shall be developed so as not to impede the normal and orderly development or improvement of surrounding property for uses permitted in this article. The site shall be designed to conform to all provisions of this article.

*** (emphasis added)

16. Outfront has obtained the required state permit to erect the billboard.

**Exhibit A**.

17. Through a written lease, Outfront has obtained permission from the owner of the property in the City of Taylor with the street address of 20410 Superior Road to erect and maintain a billboard at that location ("Property"). The Property is

6

zoned as I-1 light industrial, which, as stated above, permits the use of billboards.

18. On April 17, 2024, Outfront submitted a completed permit application for the erection of its proposed sign to the City.

19. On April 22, 2024, Outfront received the first denial of its permit application because its proposed 672-square-foot billboard size exceeded the Ordinance's maximum allowed size of 300-square feet. The City's denial stated Outfront could resubmit its plans and application if it altered its proposed billboard to the maximum allowed size or obtained a variance.

20. On May 21, 2024, Outfront applied for a dimensional variance as to the sign's face. In its application, Outfront included a site plan, a variance application, a hardship letter, renderings of the sign, and a redacted copy of Outfront's lease agreement with the Property owner.

21. On June 20, 2024, a City employee informed Outfront that, to go before the Zoning Board of Appeals with its variance request, a site plan had to first be submitted to the City Planning Commission for approval.

22. Outfront submitted its site plan with the required materials and application fee.

23. On January 9, 2025, the City reviewed the site plan and refused to process the application for site plan approval, citing a number of reasons that were

inapplicable to the proposed erection of the billboard, including, but not limited to: the need for a landscape plan, installation of a fire hydrant, construction of a sidewalk, inapplicable setback standards, inapplicable actual building development standards, proof of easements despite the presence of a lease, and evidence of a permit despite the fact that no work requiring a permit was actually necessary.

24. The City also refused to process the application on the basis that Outfront did not advise the City of the subject Property's zoning classification, which, upon information and belief, the City already knows.

25. On January 9, 2025, the City stated to Outfront that it could only reapply for site plan approval when all changes were made, submitting the required documents and again, including a new resubmission fee.

26. On February 4, 2025, Outfront responded to the City's denial. It reiterated the denials were inapplicable to its site plan application, reattached its site plan and engineering drawings, and asked that the City proceed with the site plan review process.

27. The City stated it would not move forward without an additional plan review fee of $932.503 and three sets of physical plans.

28. To date, Outfront has paid $4,137.50 for the initial permit fee, site plan review and site plan resubmittal fee.

29. To date, Outfront has had no review from the City Planning Commission.

30. To date, the City has not issued the requested permit or permitted Outfront to proceed to site plan approval.

31. Instead, the Deputy Director of Planning and Zoning, Kaitlyn Hines, warned that the City will consider Outfront's site plan application incomplete because Outfront did not enclose a site plan complying with Section 18.06(b)(2) and Section 19 of the Ordinance showing Outfront's intent, among other inapplicable requirements, to submit a landscaping review plan to plant 351 shrubs/trees and to construct a sidewalk along the Property. It also stated Outfront must build a fire hydrant on the site and show easements.

32. These Ordinance requirements are inapplicable as to the regulation and permitting processing of signs or billboards and, to the extent that any of these requirements are applicable to billboards, they are arbitrary and capricious because the City has not enforced them against Outfront's competitors.

33. Indeed, in 2013, the City leased City-owned property to a competitor of Outfront and allowed that speaker to erect a billboard that did not comply with the applicable size of the sign area and height restrictions contained in the Ordinance. The competitor's billboard is approximately 672-square feet in surface area and

approximately 60-feet tall. Further, the City did not require the competitor to install a fire hydrant, construct a sidewalk, or landscape the property.

34. Notably, the City receives lease payments from Outfront's competitor in exchange for the right to use the City's property. Thus, the City only imposes these requirements when it does not stand to benefit financially.

35. Outfront applied for a permit to erect a billboard like that of its competitor on the Property; namely, a billboard with a sign surface area of 672-square feet and other setback and dimensional relief. However, unlike its competitor, Outfront needed to obtain the dimensional variance noted above. The City approved the increased size and height variance for Outfront's competitor without complaint.

36. The City did not require Outfront's competitor to plant 351 shrubs/trees, construct a sidewalk, and show a non-existent fire hydrant on the parcel, as it did with Outfront.

37. Other than the fact that the City would not stand to benefit economically from the billboards, Outfront's proposed billboard is the same as the billboard the City allows on its property.

38. The City has acknowledged its receipt of the permit and variance applications and has accepted Outfront's payments.

39. Nevertheless, the City has not issued the requested permit or,

alternatively, scheduled a variance hearing.

40. The City's continued application of inapplicable standards to Outfront's permit and variance applications is nothing more than an impermissible prior restraint.

41. The fact that the City exempts these dimensional and additional requirements for signs that economically benefit them eviscerates any intended purpose of the Ordinance as exceptions are granted when the City stands to benefit.

## COUNT I
## 42 U.S.C. § 1983
## VIOLATION OF OUTFRONT'S CIVIL RIGHTS THROUGH UNCONSTITUTIONAL PRIOR RESTRAINT UNDER FIRST AND FOURTEENTH AMENDMENTS

42. Outfront incorporates by reference paragraphs 1-41.

43. The law looks disfavorably upon licensing schemes that constitute a prior restraint upon free speech, which are presumptively unconstitutional. *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 150-151 (1969). "[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Id*.

44. Here, the Sign Ordinance provides that an applicant must apply for a permit and, if the proposed sign does not strictly comply with the Ordinance, seek a

variance.

47. The requirement of government approval, by way of a license, permit, or otherwise, before engaging in expression is a prior restraint that is presumed to be unconstitutional unless certain safeguards are present, including, but not limited to, definite and objective standards to guide the decision to issue a permit and a brief time in which the decision must be made either to grant or deny the permit, among other requirements.

46. There are no procedural safeguards in place protecting an applicant from the unfettered discretion of City officials.

47. The Sign Ordinance unconstitutionally grants unfettered discretion to the City in its decision to approve permit and variance applications. The erection of a billboard or obtaining a variance is conditioned on application approval through a vague site plan approval process. The Sign Ordinance lacks narrow, objective, and definite standards to guide the decision of the City. Instead, the Sign Ordinance allows the City to permit signs only when "satisfied" with the applicant's site plan and, in other instances, to condition additional requirements to the site plan. The permit and variance approval process have no controls.

48. The Sign Ordinance also does not contain any time limit under which the City must act on a permit or variance application.

49. The Sign Ordinance, therefore, lacks the procedural safeguards that the First and Fourteenth Amendments require in any scheme that imposes a license or permit requirement on expression.

50. As evidenced by the City's inaction as to Outfront's applications, it is apparent that the Ordinance lacks procedural safeguards as to when decisions must be made for permits relating to signs.

51. Consequently, Outfront has suffered and will continue to suffer financial harm because of its inability to erect and use its proposed sign.

WHEREFORE, Outfront prays for judgment against the City granting Outfront injunctive and declaratory relief and awarding it damages in an amount to be determined at trial, together with attorney fees authorized by 42 U.S.C. § 1988, plus costs and interest.

**COUNT II**
**42 U.S.C. § 1983**
**DEPRIVATION OF RIGHT TO EQUAL PROTECTION**
**UNDER COLOR OF STATE LAW**

52. Outfront incorporates by reference paragraphs 1-41.

53. The City does not enforce its Ordinance on itself or preferred speakers, such as Outfront's competitor.

54. All the while, the City refuses to grant Outfront its requested permit, site plan approval, or, at a minimum, conduct a variance hearing.

55. The City has denied Outfront its right to equal protection of the law by denying Outfront the right to erect its billboard while it allows favored speakers, such as Outfront's competitor or those who provide the City with an economic incentive, to erect billboards within the City of Taylor.

56. Outfront has suffered and will continue to suffer financial harm because of its inability to erect and use its proposed sign.

WHEREFORE, Outfront prays for judgment against the City granting Outfront injunctive and declaratory relief and awarding it damages in an amount to be determined at trial, together with attorney fees authorized by 42 U.S.C. § 1988, plus costs and interest.

                                                Respectfully submitted,

                                                BODMAN PLC


                                                By: /s/ J. Adam Behrendt
                                                      J. Adam Behrendt (P58607)
                                             201 West Big Beaver Road, Suite 500
                                             Troy, Michigan 48084
                                             (248) 743-6000
                                             jbehrendt@bodmanlaw.com
                                             Attorneys for Plaintiff

April 7, 2025